## DEBRA S. GERSHMAN *v.* DONALD GERSHMAN
### (SC 17924)

Rogers, C. J., and Norcott, Vertefeuille, Zarella and Schaller, Js.

Argued September 20, 2007—officially released April 8, 2008

*Steven D. Ecker*, for the appellant (defendant).

*Gerald A. Roisman*, with whom, on the brief, was *Edith F. McClure*, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this appeal[1] is whether the trial court properly concluded that the defendant had dissipated marital assets where

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

there was no evidence that the defendant had engaged in financial misconduct for a nonmarital purpose. We conclude that the trial court improperly determined that the defendant had dissipated marital assets, and, accordingly, we reverse the judgment of the trial court.

The trial court reasonably found the following facts. The plaintiff, Debra S. Gershman, and the defendant, Donald Gershman, were married in 1987. Three children were born during the parties' eighteen year marriage: a son in 1989, and twin daughters in 1996. The plaintiff was employed as an attorney from 1986 to 1992, but stopped working outside the home in 1993 so that she could remain at home to care for her son on a full-time basis. In 1999, the plaintiff began working part-time as an art teacher at a private school, earning an annual salary of $14,000. At the time of trial,[2] the plaintiff was still employed part-time as an art teacher. The plaintiff was forty-six years old and in good health.

The defendant, who is also a licensed attorney, served as the couple's primary income earner during the marriage. From 1986 to 2005, the defendant was employed first as an attorney, and then worked in real estate development for Konover Properties Corporation (Konover), rising to the position of vice president of that organization. At Konover, the defendant's salary increased from $75,000 in 1986 to $196,000 in 2005.[3] The defendant was forty-nine years old and in good health. The defendant's employment with Konover was to terminate in January, 2006, at which time he was to receive a severance package that included one year's salary in addition to one year of health insurance coverage.

---

[2] The parties' dissolution trial was held over three and one-half days in October, 2005. The facts set forth herein represent the circumstances as they existed at the time of trial.

[3] The defendant also received a bonus of $25,000 from Konover in 2005.

In 2002, the defendant invested in a business development opportunity (Alkon partnerships) with one of the principals of Konover. The defendant initially had asked the plaintiff to invest some of her separately owned funds in these partnerships, but the plaintiff declined to do so. The defendant thereafter opted to use his own funds to make an initial investment of $105,000.[4] At the time of the dissolution of the marriage, the Alkon partnerships were valued at $31,074.

The parties purchased their first home, in West Hartford, in 1987. They lived together in this house for several years, but thereafter decided to construct a larger home to accommodate their growing family. The parties moved into their new home on Arlen Way in West Hartford in 2002 (Arlen Way residence). Although they originally had set a budget of $500,000 to $600,000 for the Arlen Way residence, the construction of the house, which was overseen primarily by the defendant, ultimately cost $994,000, including $50,000 for a construction manager hired by the defendant. The trial court found that the defendant had been primarily responsible for the allegedly excessive cost of the house,[5] and that the plaintiff had not been aware of the magnitude of the cost until she filed for divorce in 2004. The house ultimately was sold pendente lite for $787,500.

The parties both had substantial, separate financial assets before they were married and at the time of dissolution. The plaintiff's premarital assets, family gifts

---

[4] The cost of investing in the Alkon partnerships was $105,000 plus a note for an additional $105,000 to be paid from the profits of the partnerships. The defendant also had an interest in another partnership, known as Alkon Livonia, LLC, and Franklin Commercial Associates, L.P. The trial court found that the defendant paid a total of "approximately $123,000" for his interest in the two groups of Alkon partnerships.

[5] For example, the defendant approved certain amenities for the home, including: upgraded heating and cooling systems; a jacuzzi for the master bathroom; a steam shower; a finished area over the garage; the addition of a tray ceiling in the master bedroom; and a finished basement.

and inherited assets totaled $1,171,900.87. The total cash value of her assets on her amended financial affidavit at the time of the dissolution trial was approximately $1,796,144. By contrast, the defendant's assets declined over the course of the marriage. Although he entered the marriage with premarital assets, inheritances and family gifts totaling $795,737, his financial affidavit at trial listed total assets of $782,304.72, including a 401 (k) account of $193,275.72, which had accrued during the marriage.

When the trial court rendered judgment dissolving the marriage, it entered orders regarding child support, property distribution, alimony and other matters. In issuing its award, the trial court concluded: "[The defendant] made a bad investment in the Alkon partnerships, paying approximately $123,000 for an asset he now values at $31,074. The court finds that he was primarily responsible for the cost overruns for the home on Arlen Way and [the parties] lost $200,000 on the sale of the home. The matter of the dissipation of family assets has been taken into consideration in the overall asset division." This appeal followed.

On appeal, the defendant claims that the trial court improperly: (1) determined that he had dissipated marital assets despite the absence of any evidence of financial misconduct for a nonmarital purpose; (2) ordered the defendant to pay 45 percent of the cost of educating the minor children in private schools through the completion of high school despite the defendant's desire that his children attend public school; and (3) failed to make findings with regard to the plaintiff's earning capacity. We agree with the defendant's first claim, which is dispositive of this appeal.

The defendant claims that the trial court improperly concluded that he had dissipated family assets. More specifically, the defendant asserts that his conduct did

not constitute dissipation as a matter of law, because dissipation requires a finding that one spouse engaged in financial misconduct, such as intentional waste or selfish financial impropriety, and a further finding that such conduct was motivated by a purpose unrelated to the marriage. The plaintiff asserts, in response, that the trial court properly considered all statutory criteria in its property distribution, only one of which was dissipation of family assets. We agree with the defendant, and, accordingly, we reverse the judgment of the trial court.

We begin our analysis of this claim with the applicable standard of review. Although we generally apply the well settled abuse of discretion standard in domestic relations matters, our review in the present case is plenary because we address the question of what, as a matter of law, constitutes dissipation in the context of a marital dissolution proceeding. *Weinstein* v. *Weinstein*, 280 Conn. 764, 770, 911 A.2d 1077 (2007).

Generally, dissipation is intended to address the situation in which one spouse conceals, conveys or wastes marital assets in anticipation of a divorce. See 2 B. Turner, Equitable Distribution of Property (3d Ed. 2005) § 6:102, p. 539. Most courts have concluded that some type of improper conduct is required before a finding of dissipation can be made. Thus, courts have traditionally recognized dissipation in the following paradigmatic contexts: gambling,[6] support of a paramour,[7] or the transfer of an asset to a third party for little or no consideration.[8] Well-defined contours of the doctrine

---

[6] *Wilner* v. *Wilner*, 192 App. Div. 2d 524, 525, 595 N.Y.S.2d 978 (1993) (where husband incurred gambling losses depleting substantial marital funds, proper to award wife 75 percent of remaining assets).

[7] *In re Marriage of Osborn*, 206 Ill. App. 3d 588, 600–601, 564 N.E.2d 1325 (1990) (funds spent by husband on trips to Brazil, Argentina, Aruba and Minnesota with another woman were dissipation), appeal denied, 137 Ill. 2d 666, 571 N.E.2d 150 (1991).

[8] *Hollander* v. *Hollander*, 89 Md. App. 156, 163, 597 A.2d 1012 (1991) (dissipation found where husband gave dental practice to daughter to deceive court).

are somewhat elusive, however, particularly in more factually ambiguous situations.

A review of the case law in other jurisdictions[9] reveals that findings of financial misconduct are fact specific, and frequently turn on the motivation of the party charged with misconduct. A representative case is *McDavid* v. *McDavid*, 333 S.C. 490, 511 S.E.2d 365 (1999). In *McDavid*, the South Carolina Supreme Court interpreted a statute that allowed a family court to consider in the equitable division of property the "marital misconduct or fault of either or both parties." (Internal quotation marks omitted.) Id., 493. The trial court had found that, in the context of a marital dissolution proceeding, the husband's expenditure of $24,143.50, without his wife's knowledge, to support his failing business constituted "misconduct" under the statute, and warranted a downward adjustment in his share of the marital assets at the time of dissolution. Id. The South Carolina Court of Appeals reversed the trial court and the state Supreme Court affirmed, holding that one spouse may be chargeable with a downward modification of his or her share of equitable distribution "only where he/she acts in bad faith with an intent to deprive the other spouse of marital assets." Id., 495. More specifically, the court concluded that "poor business decisions, in and of themselves, do not warrant a finding of marital misconduct" and "there must be some evidence of willful misconduct, bad faith, intention to dissipate marital assets, or the like, before a court may alter the equitable distribution award for such misconduct." (Internal quotation marks omitted.) Id., 496; see also *In re Marriage of Fennelly*, 737 N.W.2d 97, 106 (Iowa 2007) (husband dissipated marital assets through unex-

[9] Connecticut appellate cases involving dissipation provide little or no explication of the elements of dissipation in the marital dissolution context. See, e.g., *Grimm* v. *Grimm*, 276 Conn. 377, 385, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

plained cash advances on his credit cards at end of marriage).

Many courts require that a marital asset be used for a nonmarital purpose before there can be any finding of dissipation. For example, in *Harris* v. *Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001), the Nebraska Supreme Court considered whether a husband who had withdrawn more than $48,000 from a marital savings account in anticipation of a marriage dissolution could be charged with having dissipated those assets and consequently penalized in the dissolution asset distribution. The Supreme Court ruled that the trial court improperly had concluded that the husband had dissipated the entire sum because the trial court had failed to account for the fact that the husband had spent a substantial portion of the funds on marital expenses, including, for example, car payments, utilities for the home, and grocery purchases. Id., 86. On remand, the trial court was instructed to subtract the expenses incurred for a valid marital purpose from the aggregate amount of the withdrawal, and to consider only the difference as having been dissipated. Id.; see, e.g., *In re Marriage of Isaacs*, 260 Ill. App. 3d 423, 429, 632 N.E.2d 228 (dissipation defined as one spouse using marital property for own benefit and for purpose not related to marriage), appeal denied, 157 Ill. 2d 502, 642 N.E.2d 1281 (1994); *Sharp* v. *Sharp*, 58 Md. App. 386, 401, 473 A.2d 499 (1984) (defining dissipation as occurring "where one spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage"); see also 2 B. Turner, supra, p. 575 ("[t]he distinction between a marital and nonmarital purpose lies at the heart of the law of dissipation").

Poor investment decisions, without more, generally do not give rise to a finding of dissipation. The North Dakota Supreme Court reversed a trial court that had found that the husband committed economic miscon-

duct by transferring joint marital assets to a potato farming investment. *Hoverson* v. *Hoverson*, 629 N.W.2d 573 (N.D. 2001). "A majority of this court has never agreed that financial mismanagement, without more, constitutes economic fault. Spouses who are in business may have to make business decisions. We also recognize business decisions may result in losses." Id., 581. Mere mismanagement, the court concluded, did not constitute dissipation. Id.; see, e.g., *Rosenbloom* v. *Rosenbloom*, 851 So. 2d 190, 191 (Fla. App. 2003) ("[t]he former husband, who would have shared in any profits, must share equally in the losses, notwithstanding that the former wife's investment conduct may well have been imprudent"; wife did not act for purpose of harming husband); *Jacobs* v. *Jacobs*, Ohio Court of Appeals, Docket No. 02CA2846, 2003 Ohio App. LEXIS 3205, *19 (June 6, 2003) ("investing, even poor investing, is neither wrongdoing nor financial misconduct"; husband's risky investments were made in good faith, and some had been profitable); see also 2 B. Turner, supra, p. 586 ("Investment is a valid marital purpose if the investor has a good faith intent to make a profit for the marital estate. . . . [I]f a party makes good faith investments which lose money through no fault of his or her own, there is no dissipation.").

Similarly, the weight of authority holds that the use of marital assets to purchase marital property generally does not constitute dissipation. See, e.g., *In re Marriage of Hahin*, 266 Ill. App. 3d 168, 172, 644 N.E.2d 4 (1994) (mere change in form of marital assets was not dissipation); *March* v. *March*, 435 N.W.2d 569, 572 (Minn. App. 1989) (funds spent replacing roof on marital home not dissipated); *Petties* v. *Petties*, 129 S.W.3d 901, 906–907 (Mo. App. 2004) (funds spent to maintain and remodel marital rental properties not dissipated); *Livingston* v. *Livingston*, 58 S.W.3d 687, 689 n.1 (Mo. App. 2001) (funds spent to repair marital property not dissipated);

*Jones* v. *Jones*, 958 S.W.2d 607, 614 (Mo. App. 1998) (no dissipation where husband sold failing business during pendency of dissolution action for low price where several neutral third persons had advised husband to sell business for whatever price he could attain); *Harris* v. *Harris*, supra, 261 Neb. 86 (funds spent to make payments on marital car were not dissipated); *Maczek* v. *Maczek*, 248 App. Div. 2d 835, 836–37, 669 N.Y.S.2d 749 (1998) (funds spent to maintain marital property not dissipated); see also 2 B. Turner, supra, p. 591 (noting that "[p]urchase of marital property is clearly a valid marital purpose"). The rationale, according to Turner, is that in such a situation, the funds are not actually dissipated but "have merely been changed into another form." 2 B. Turner, supra, p. 591; but see *Reynolds* v. *Reynolds*, 109 S.W.3d 258, 276–77 (Mo. App. 2003) (dissipation found where wife sold marital property at garage sales and other informal settings, obtaining unreasonably low price and failing to determine fair value of assets sold); *Syslo* v. *Syslo*, Ohio Court of Appeals, Docket No. L-01-1273, 2002 Ohio App. LEXIS 5280 (September 30, 2002) (dissipation where husband sold approximately $86,500 in marital property at garage sale, netting only $7400), appeal denied, 98 Ohio St. 3d 1477, 784 N.E.2d 711, cert. denied, 540 U.S. 983, 124 S. Ct. 468, 157 L. Ed. 2d 373 (2003).

The conclusion in these cases comports with the view expressed in leading treatises on domestic relations law, which generally provide that a harmful or selfish expenditure of marital assets undertaken for a nonmarital purpose is required before one spouse can be found to have dissipated marital assets. See, e.g., 2 B. Turner, supra, §§ 6:102 and 6:107; 24 Am. Jur. 2d, Divorce and Separation §§ 560 through 562 (1998).[10] We conclude

---

[10] Many authorities also have found a temporal element to be an essential component of dissipation. Specifically, many courts have found dissipation only where the financial misconduct occurred at a time when the marriage was in jeopardy or in anticipation of divorce. See, e.g., *Herron* v. *Johnson*, 714 A.2d 783, 785 (D.C. 1998) (dissipation occurs "where one spouse uses

that, at a minimum, dissipation in the marital dissolution context requires financial misconduct involving marital assets, such as intentional waste or a selfish financial impropriety, coupled with a purpose unrelated to the marriage.

We now turn to the trial court's findings in the present case. As we have noted previously herein, the trial court considered the defendant's "dissipation of family assets" in ordering the overall asset division between the parties. The trial court specifically referred to two acts of dissipation. The first was the defendant's "bad investment" in the various Alkon partnerships.[11] The second was the $200,000 loss on the sale of the excessively expensive marital home. The trial court, however, did not find either financial misconduct, e.g., intentional waste or a selfish financial transaction, or that the defendant had used marital assets for a nonmarital purpose with regard to either of these transactions. In the absence of such findings, we must reverse the judgment of the trial court and remand the case for a new trial.

We previously have characterized the financial orders in dissolution proceedings as resembling a mosaic, in which all the various financial components are carefully interwoven with one another. See, e.g., *Ramin* v. *Ramin*, 281 Conn. 324, 350, 915 A.2d 790 (2007); *Grimm* v. *Grimm*, 276 Conn. 377, 386, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed.

marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown"); *In re Marriage of Charles*, 284 Ill. App. 3d 339, 343, 672 N.E.2d 57 (1996) (noting that dissipation occurs "at a time that the marriage is undergoing an irreconcilable breakdown" [internal quotation marks omitted]). Neither party in the present case has raised or addressed a temporal element and we therefore do not address it.

[11] The trial court found that the defendant had made the investments in the various partnerships from "his own funds . . . ." Given that he did not use marital assets for the investments, we question whether the investments could be determined to be dissipation regardless of the purpose.

2d 815 (2006); *Greco* v. *Greco*, 275 Conn. 348, 354, 880 A.2d 872 (2005); see also *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999) (noting that "when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders"). In the present case, in addition to challenging the trial court's dissipation ruling, the defendant claims that the trial court improperly: ordered him to pay 45 percent of the cost of private education for his children, and failed to attribute an earning capacity to the plaintiff that is commensurate with her training as an attorney. Because it is uncertain whether the trial court's financial awards will remain intact after reconsidering the issue of dissipation of marital assets consistent with this opinion today, the entirety of the mosaic must be refashioned. Accordingly, we must reverse the judgment of the trial court and remand the case for a new trial.[12]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

---

[12] See *Krafick* v. *Krafick*, 234 Conn. 783, 663 A.2d 365 (1995). In *Krafick*, this court considered whether, in the context of a dissolution action, vested pension benefits constitute property for purposes of equitable distribution, and if so, how that property should be valued. Id., 785. This court reversed the judgment of the Appellate Court, which had affirmed the judgment of the trial court dissolving the parties' marriage and distributing their marital assets. Id. This court ruled that the trial court improperly failed to treat the pension as an asset, to assign it a value, and to apportion it equitably. Id., 792. Because this court found the issues involving financial orders to be "entirely interwoven . . . [in a] carefully crafted mosaic"; (internal quotation marks omitted) id., 806; this court remanded the case to the trial court for a new hearing and determination regarding all of the financial orders of the judgment of dissolution. Id., 806–807. Similar to *Krafick*, in the present case, because we conclude that the trial court improperly ruled that the defendant had dissipated marital assets, we remand the case to the trial court for a new hearing and determination on all of the financial orders. Accordingly, we do not address the defendant's remaining claims.