KAREN B. SHAULSON *v.* DAVID A. SHAULSON
(AC 29978)

Bishop, Robinson and Dupont, Js.

Argued October 28—officially released December 28, 2010

*Brendon P. Levesque,* with whom were *Karen L. Dowd,* and, on the brief, *Kimberly A. Knox* and *Dana M. Hrelic,* for the appellant (defendant).

*Gaetano Ferro,* with whom were *Sarah E. Murray,* and, on the brief, *Anthony L. Cenatiempo,* for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, David A. Shaulson, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Karen B. Shaulson, and entering related financial orders. On appeal, the defendant claims that the court (1) improperly found that he had dissipated marital assets, (2) abused its discretion in finding that a life insurance trust did not exist but, nevertheless, awarding him the cash value of the policy as part of his share of the marital assets and (3) improperly ordered him to pay certain monthly amounts of

unallocated alimony and child support.[1] We disagree and, accordingly, affirm the judgment of the trial court.

The plaintiff commenced this marital dissolution action against the defendant in November, 2005. Although the parties reached an agreement regarding the custody and parenting of their four young daughters, they were unable to agree on financial matters. Following a trial on the financial issues, the court, on May 12, 2008, rendered an oral decision dissolving the parties' marriage, incorporating into the judgment of dissolution the parties' custody agreement and making certain financial orders. The court found that the plaintiff had not been employed outside the home since the birth of the parties' children, and, thus, the defendant was the sole wage earner for the family. The court further found that the defendant had dissipated large sums of the parties' savings in violation of the automatic court orders,[2] and, consequently, the court "charged all [of] that inappropriate spending to [the defendant's] portion of the divided assets." The court also ordered, inter alia, the defendant to pay to the plaintiff $40,000 per month in unallocated alimony and child support as well as 25 percent of the defendant's gross income over $1 million. The court awarded the plaintiff the marital home and two adjacent lots owned by the parties.

---

[1] In the dissolution judgment, the court ordered the defendant to pay to the plaintiff $40,000 per month as unallocated alimony and child support. That amount was subsequently modified to $30,000 per month. The defendant is challenging both orders on appeal.

[2] Practice Book § 25-5 (a) provides in relevant part: "The following automatic orders shall apply to both parties, with service of the automatic orders to be made with service of process of a complaint for dissolution of marriage . . .

"(1) Neither party shall sell, transfer . . . or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with this action. . . ."

Although the court determined that there was no life insurance trust, the court awarded the cash value of the subject policies to the defendant.

On May 22, 2008, the defendant filed a motion to reargue, which the court denied. Also on that date, the court filed a "clarified and corrected memorandum of decision," making minor clarifications, alterations and additions with respect to its May 12, 2008 decision.[3] On May 30, 2008, the defendant timely appealed from the judgment of dissolution.

On July 8, 2008, the court held a hearing regarding certain postjudgment motions filed by the parties. At the commencement of the hearing, the court, sua sponte, issued an oral "clarified and articulated decision" with respect to its May 12, 2008, alimony and child support order, explaining that it did not believe that this was a child support guidelines case because the presumptive amount of support required under the guidelines would be "grossly inappropriate" given the defendant's income. On July 25, 2008, the defendant filed an amended appeal to include this ruling.

Subsequently, the defendant filed a motion for articulation, which the court denied on October 1, 2008. The defendant filed a motion for review of that denial, which this court granted, in part, and ordered the trial court to articulate (1) whether it based its unallocated award of alimony and child support on the defendant's actual earned income or on his earning capacity; (2) what it

---

[3] In its clarification, the court stated, inter alia, that "it found incredible the claims of [the defendant] regarding both his expenditures and his reduced income. His spendthrift conduct throughout the proceeding belies a man suffering from or concerned about diminishing income. His demeanor on the [witness] stand, and the manner in which he answered questions, did not point to truthfulness. The court rejects [the defendant's] claims that his income has decreased and that its future is in jeopardy." Because the court's other articulations are not relevant to the issues on appeal, we need not set them forth herein.

determined the defendant's actual earned income or earning capacity, whichever was applicable, to be; (3) whether its determination of actual earned income or of earning capacity was based on gross or net earnings; (4) what it found the cash value of the alleged life insurance trust to be when it awarded that cash value to the defendant; and (5) what it found the value of the marital home and the adjacent two lots to be.[4]

In response, on February 11, 2009, the trial court filed its articulation in which it indicated that it had based its financial orders on the defendant's earning capacity, which it determined to be $900,000 per year, based on an average of recent years' earnings. The court further articulated that it had found the cash value of the "alleged life insurance trust" to be $650,000. The court also stated that it had determined the fair market value of the marital home to be $820,000, with an outstanding mortgage of $478,587, leaving equity of $341,413, and the combined value of the two adjacent lots to be $200,000.

On February 23, 2009, the defendant filed a motion for further articulation asking the trial court to indicate what it had determined the defendant's net income to be in 2007, upon which it had based its financial order. The trial court denied the defendant's motion, and the defendant filed a motion for review, which this court granted. On July 2, 2009, the court further articulated its decision, stating that it had based the financial orders on the defendant's earning capacity of $900,000, which

[4] Thereafter, the defendant filed a motion to modify support, claiming that, in light of the state of the financial markets, his income had been substantially decreased. On December 8, 2008, the court granted the defendant's motion to modify and reduced his unallocated alimony and child support payments to $30,000 per month. On December 18, 2008, the defendant filed a second amended appeal to include the trial court's order reducing his monthly support. On that same date the defendant filed a motion for articulation concerning the court's decision. The court denied the motion for articulation on February 9, 2009. The defendant did not seek review of that ruling.

would make his net income approximately $540,000. In explaining how it reached the determination of that net income, the court went on to explain the calculations that it made with regard to the defendant's tax liabilities as well as the plaintiff's receipt of the unallocated alimony and child support and the resulting tax ramifications. The court also explained the calculations that it had made in modifying the unallocated award of alimony and child support to $30,000 per month. Additional facts will be set forth as necessary.

We begin by setting forth our general standard of review in an appeal challenging the financial orders made in a dissolution of marriage judgment. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citations omitted; internal quotation marks omitted.) *Maturo* v. *Maturo*, 296 Conn. 80, 87–88, 995 A.2d 1 (2010). With these principles in mind, we turn to the defendant's claims on appeal.

I

The defendant first claims that the court improperly concluded that he had dissipated marital assets in violation of the automatic orders by spending $150,000 to furnish his new home and that the court improperly charged the alleged dissipation against his share of the marital assets.[5] We disagree.

[5] The defendant is not challenging on appeal the court's finding that many of his other expenditures, possibly totaling an additional $300,000, violated the automatic orders.

Our review of this claim is guided, as the defendant suggests, by *Gershman* v. *Gershman*, 286 Conn. 341, 943 A.2d 1091 (2008). In *Gershman*, our Supreme Court was faced with the question of "what, as a matter of law, constitutes dissipation in the context of a marital dissolution proceeding." Id., 346. The court concluded: "[A]t a minimum, dissipation in the marital dissolution context requires financial misconduct involving marital assets, such as intentional waste or a selfish financial impropriety, coupled with a purpose unrelated to the marriage." Id., 351.

The defendant invites this court to conclude, as a matter of law, that expenditures for the purpose of furnishing a new home, especially a home at which the parties' children spend a significant amount of time, cannot amount to the dissipation of assets. We decline, however, to make such a determination. We conclude that such an expenditure may or may not constitute dissipation, depending upon the circumstances of the case.

Here, the court's comments about the expenditure of $150,000 for furnishing a new home must fairly be read in the context of its response to the defendant's spending habits in general while this matter was pending.[6] In that regard, the court found that the defendant

---

[6] The court stated: "I have to say that in my almost twenty years on the bench and having practiced since 1976, I have never seen a case with such complete and utter dissipation of such large amounts of assets. . . . I've seen people spend some savings, all of their savings, but not to this degree.

"And I think if the automatic orders have any meaning, if this is obeying the automatic orders, then the automatic orders have no meaning. Because even considering the large amounts of attorney fees that were being paid out and the large amounts of support being paid, the amount of money spent on unnecessary, extravagant items is mind boggling . . . .

"Mr. Shaulson, you were running through money absent your obligations as if somebody had said, 'O.K., you've got twenty-two months, how much can you spend?' And you were off to the races. . . . [Y]ou spent nicely before, but you didn't spend $150,000 on stuff that you had in your other house in that period of time. . . .

"[I]t's not an ordinary course of events for somebody who had a desk at their house which was relatively minimalist to then spend the amount of money you did for furnishing your office in your new house. That's not an

had expended no less than $250,000, and possibly as high as $485,000, for trips, gifts to his fiancee as well as household furnishings. The record demonstrates that the court specifically found that the defendant's expenditure of $150,000 to furnish his new house was excessive and not in accordance with his previously "minimalist" furnishings.[7] The court further found that there was no justification for the $150,000 in expendi-

ordinary and necessary expense; $150,000 in furnishings was not an ordinary expense. The engagement ring, the trips, the charges. . . .

"[T]he automatic orders are designed to preserve the assets. And the assets in this case, if you look at the old financial affidavits and you look at the new financial affidavits . . . . Maybe it wasn't an engagement ring. It was a ring purchase. I don't know for what purpose.

"[T]he inappropriate spending is something . . . that the court can't ignore and I can't restore the funds. And so you will see when I get to my orders that I've charged all that inappropriate spending to your portion of the divided assets.

"You had control of it. You chose to do it. If you want to stay at expensive hotels and eat out to that degree or buy $150,000 worth of furniture, that's fine and dandy, but I'm not going to credit [that] against [the plaintiff's] portion of the assets."

The court told the defendant: "[I]n terms of your behavior, vis-a-vis the money, the conclusion I can reach is that this was a wilful attempt to spend every nickel you had so that the court had less to put its hands on because it wasn't in anybody's interest to spend the money like this. There was no reason to do it. . . . [I]n the end, it hurts the family." With regard to its finding that the defendant violated the automatic orders, the court further stated: "[I]f contempt of court is to show an utter disdain, disrespect for the authority of the court or its jurisdiction over your financial matters, then you take the cake. That's what you did." The court found that the amount of assets that the defendant may have spent in violation of the automatic orders was between $250,000 and $485,000. The court told the defendant that he had been "spending like a drunken sailor . . . . When you are in the middle of a divorce . . . you can't go out buying jewelry for other people and not think that it's going to get counted against you. You can't spend $150,000 furnishing a house . . . not that you couldn't furnish the house, but it doesn't take $150,000 to furnish the house.

"Travel, cruises, charges. The charges were . . . like . . . spending like a drunken sailor. And so I have charged you with all those. . . . [B]ecause if the intent was to diminish the estate so there was less to give [the plaintiff], I hope that I haven't done that by way of my orders because it was my intent to count all of that back in as much as I could estimate."

[7] The defendant testified that, in furnishing his new home, he purchased three television sets, costing $500, $3500 and $5000, respectively. The defendant also testified that he spent over $7000 on computer equipment and $40,000 on antiques for his new home.

tures and that it was detrimental to the family. In response, the defendant argues that his expenditure of $150,000 was justified because he needed to provide a suitable household for his children, who spend 40 percent of their time with him. We are unconvinced by the defendant's argument. Rather, we conclude that the court properly determined that spending $150,000 to furnish the defendant's new home constituted dissipation of the marital assets under the circumstances confronted by the court. Because "Connecticut trial courts have the statutory authority, under [General Statutes] § 46b-81, to consider a spouse's dissipation of marital assets when determining the nature and value of property to be assigned to each respective spouse";[8] *Finan* v. *Finan*, 287 Conn. 491, 500–501, 949 A.2d 468 (2008); we conclude that the court's order in this regard was not improper.

## II

The defendant next claims that the court improperly found that an irrevocable life insurance trust did not exist but, nevertheless, awarded the cash value of the policies alleged by the defendant to have been held in that trust to the defendant as part of its distribution of marital assets. In considering this issue, the court discredited the defendant's testimony that such a trust existed but credited his testimony that the cash value of the policies was $650,000 and awarded that amount to the defendant. In assessing this claim we are mindful of the well trodden notion that the trial court is the

[8] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . .

"(c) In fixing the nature and value of the property . . . to be assigned . . . [t]he court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

"sole arbiter of credibility, [and it is] free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 357, 999 A.2d 713 (2010). Here, the court found on the basis of evidence it credited that the subject life insurance policies, though not part of a trust, nevertheless had a certain cash value. The court, therefore, did not abuse its discretion in awarding the cash value of the policies to the defendant as part of his share of the marital assets. Accordingly, the defendant's claim fails.

## III

The defendant finally claims that the court improperly ordered him to pay to the plaintiff $40,000 per month, subsequently modified to $30,000, as unallocated alimony and child support. The defendant's claim in this regard is twofold. He claims that the court (1) improperly waived the child support guidelines, did not expressly deviate from the guidelines and failed to make the statutorily required findings for deviating from the guidelines and (2) abused its discretion in awarding those specific amounts because they were inequitable in light of its other orders dividing the marital assets. In response, the plaintiff argues, inter alia, that the defendant's failure to file a child support guidelines worksheet with the court should preclude him from complaining that the court failed to adhere to the guidelines.

"In *Favrow* v. *Vargas*, 231 Conn. 1, 29, 647 A.2d 731 (1994), our Supreme Court stressed adherence by the trial court to observe the procedures set out in the child support guidelines to facilitate appellate review. Recently, in *Bee* v. *Bee*, 79 Conn. App. 783, 787–88, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003), we concluded that a party who fails to submit a child support guidelines worksheet is precluded from

complaining of the alleged failure of the trial court to comply with the guidelines and that we will not review such a claim. *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 485, 850 A.2d 227, cert. denied, 271 Conn. 903, 859 A.2d 562 (2004)." (Internal quotation marks omitted.) *Gentile* v. *Carneiro*, 107 Conn. App. 630, 655, 946 A.2d 871 (2008).

Our review of the record reveals, and the defendant acknowledges, that he did not file a child support guidelines worksheet. Indeed, the court's stated reason for basing its orders on the defendant's earning capacity rather than his actual earnings was that the defendant was less than forthcoming about his financial situation. Because the defendant failed to supply the court with the required information for a guideline based order of child support, he cannot now complain that it does not comply with the guidelines or that the court improperly failed to make an independent determination of the guideline indicated child support applicable to the parties' incomes. Accordingly, we decline to review his claim.

The judgment is affirmed.

In this opinion the other judges concurred.