******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL J. FERRI, TRUSTEE, ET AL. *v.*
NANCY POWELL-FERRI ET AL.
(SC 19317)

Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued March 25—officially released June 16, 2015*

*Kenneth J. Bartschi*, with whom were *Karen L. Dowd* and, on the brief, *Thomas P. Parrino* and *Laura Shattuck*, for the appellant (named defendant).

*Jeffrey J. Mirman*, for the appellee (defendant Paul John Ferri, Jr.).

*Opinion*

EVELEIGH, J. This appeal arises from a dissolution action, dissolving the marriage of the named defendant, Nancy Powell-Ferri, and the defendant, Paul John Ferri, Jr. (Ferri). The dispositive issue in this appeal is whether the trial court properly rendered summary judgment in favor of Ferri on the cross complaint filed by Powell-Ferri on the ground that it failed to plead a legally sufficient cause of action. Specifically, Powell-Ferri's cross complaint alleged that Ferri had breached his duty to preserve marital assets during the pendency of their marital dissolution action by failing to take any affirmative steps to contest the decanting of certain assets from a trust by the plaintiffs, Michael Ferri and Anthony Medaglia, who were then serving as trustees.[1] We conclude that this state does not require a party to a dissolution action to take affirmative steps to recover marital assets taken by a third party and, accordingly, affirm the judgment of the trial court.

In its memorandum of decision, the trial court set forth the following relevant facts and procedural history. Powell-Ferri filed an action for dissolution of her marriage to Ferri on October 26, 2010, which is still pending. Ferri is the sole beneficiary of a trust created by his father, Paul John Ferri, Sr., in 1983 (1983 trust). The plaintiffs were named as trustees of the 1983 trust. Michael Ferri is Ferri's brother and business partner.

The 1983 trust provides that, after Ferri attained the age of thirty-five, he would have the right to withdraw principal from the trust in increasing percentages depending on his age. In March, 2011, while the underlying dissolution action was pending, the plaintiffs created a second trust whose sole beneficiary was Ferri (2011 trust). The plaintiffs then distributed a substantial portion of the assets in the 1983 trust to the 2011 trust.[2]

Unlike the terms of the 1983 trust, the terms of the 2011 trust do not allow Ferri to withdraw principal. Instead, under the terms of the 2011 trust, the plaintiffs have all of the control and decision-making power as to whether Ferri will receive any of the trust income or assets.

The trial court found that Ferri did not have a role in creating the 2011 trust or decanting any of the assets from the 1983 trust. The trial court further found that it was undisputed that Ferri took no action to recover the trust assets when Michael Ferri informed him of the creation of the 2011 trust and the decanting of the assets. The trial court characterized the reasoning behind this inaction as follows: "[Ferri] does not want to sue his family . . . and he believes the [plaintiffs] are acting in his best interest."

After the plaintiffs created the 2011 trust and transferred the assets from the 1983 trust to it, they instituted the present declaratory judgment action seeking a rul-

ing from the court that they had validly exercised their authority in transferring the assets and that Powell-Ferri had no interest in the 2011 trust assets. Powell-Ferri filed a counterclaim asserting claims of common-law and statutory fraud, civil conspiracy, and seeking a declaratory judgment. After the trial court struck counts alleging fraud and conspiracy, Powell-Ferri filed a second amended counterclaim, later revised, asserting claims of breach of fiduciary duty, breach of loyalty, tortious interference with an expectancy, and seeking a declaratory judgment, as well as the cross complaint that is the subject of this appeal.

Ferri filed a motion for summary judgment, claiming that the cross complaint failed to state a cause of action, and that even if it did set out a cause of action, there was no genuine issue of material fact to support Powell-Ferri's claims. Powell-Ferri opposed the motion on procedural grounds, namely that summary judgment is not the proper means to test the legal sufficiency of a complaint, and on the merits.

The trial court granted the motion for summary judgment, concluding that Powell-Ferri failed to state a cause of action. The trial court reasoned that, while marital partners have a fiduciary responsibility of full and open disclosure to each other, that responsibility does not extend to require spouses to recover assets belonging to the marital estate. The trial court observed that while spouses may not dissipate assets, "at a minimum dissipation in the marital dissolution context requires financial misconduct involving marital assets, such as intentional waste or a selfish financial impropriety, coupled with a purpose unrelated to the marriage." *Gershman* v. *Gershman*, 286 Conn. 341, 350–51, 943 A.2d 1091 (2008). The trial court concluded that there was no allegation that Ferri "engaged in intentional waste or selfish impropriety." The court further reasoned that if such allegations were present, "[t]here is no societal expectation embodied in the law which impels or compels a divorcing spouse to take affirmative steps to recover an asset removed from the marital estate by the action of a third party alone." Accordingly, the court determined that the cause of action Powell-Ferri urged should not be recognized in Connecticut. This appeal followed.[3]

I

On appeal, Powell-Ferri first claims that the trial court improperly rendered summary judgment in favor of Ferri on the ground that her cross complaint did not plead a legally sufficient cause of action. Specifically, Powell-Ferri claims that the trial court improperly concluded that Ferri did not have a duty to act to preserve marital assets during the pendency of a dissolution action. In response, Ferri claims that the trial court properly granted his motion for summary judgment because Connecticut should not recognize a new cause

of action imposing a duty to act to preserve marital assets during the pendency of a dissolution action. We agree with Ferri.

We begin our analysis with the standard of review applicable to a trial court's decision to grant a motion for summary judgment. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A party moving for summary judgment is held to a "strict standard." *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 11, 938 A.2d 576 (2008). "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) Id.

It is undisputed that, in this state, the question of whether a party to a dissolution action has a duty to act to preserve marital assets is an issue of first impression. Therefore, in this appeal we must determine whether we will recognize a new cause of action. "An exhaustive search of Connecticut case law reveals no hard and fast test that courts apply when determining whether to recognize new causes of action. We do have the inherent authority, pursuant to the state constitution, to create new causes of action. *Binette* v. *Sabo*, 244 Conn. 23, 34, 710 A.2d 688 (1998). Moreover, it is beyond dispute that we have the power to recognize new tort causes of action, whether derived from a statutory provision or rooted in the common law. *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 235, 905 A.2d 1165 (2006); see, e.g., *Mead* v. *Burns*, 199 Conn. 651, 663, 509 A.2d 11 (1986) (recognizing action for damages under Connecticut Unfair Trade Practices Act for violations of Connecticut Unfair Insurance Practices Act); *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 480, 427 A.2d 385 (1980) (recognizing tort of wrongful

discharge); *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 307, 93 A.2d 292 (1952) (recognizing torts of intentional and negligent infliction of emotional distress).

"When we acknowledge new causes of action, we also look to see if the judicial sanctions available are so ineffective as to warrant the recognition of a new cause of action. *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 235–36. To determine whether existing remedies are sufficient to compensate those who seek the recognition of a new cause of action, we first analyze the scope and applicability of the current remedies under the facts alleged [in the operative pleading]. Id., 236. Finally, we are mindful of growing judicial receptivity to the new cause of action, but we remain acutely aware of relevant statutes and do not ignore the statement of public policy that such statutes represent. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 480." *ATC Partnership* v. *Coats North America Consolidated, Inc.*, 284 Conn. 537, 552–53, 935 A.2d 115 (2007).

In the present case, the obligations of spouses to each other during the pendency of a dissolution action are set forth in General Statutes §§ 46b-80 and 46b-81.[4] These statutes require parties to take certain steps in order to secure their financial interest in real property during the pendency of the dissolution and allow the court to order distribution of marital assets. Furthermore, this court has recognized that the trial court may consider a party's actions in dissipating marital assets when making its financial orders. See, e.g., *Finan* v. *Finan*, 287 Conn. 491, 508–509, 949 A.2d 468 (2008); *Gershman* v. *Gershman*, supra, 286 Conn. 346–47.

Furthermore, Practice Book § 25-5 provides that automatic orders relating to the finances of the parties shall be served "with service of process of a complaint for dissolution of marriage or civil union, legal separation, or annulment . . . ." These automatic orders require parties to the dissolution action to exchange financial information in the form of sworn financial statements. The automatic orders also require parties to dissolution actions not to "sell, transfer, exchange, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with this action." Practice Book § 25-5 (b) (1). They also prohibit either party from concealing or encumbering any property. Practice Book § 25-5 (b) (2) through (3). Parties to dissolution actions are also ordered not to "cause any asset, or portion thereof, co-owned or held in joint name, to become held in his or her name solely without the consent of the other party, in writing, or an order of the judicial authority." Practice Book § 25-5 (b) (4). Further, "[n]either party shall incur unreasonable debts hereafter, including, but not limited

to, further borrowing against any credit line secured by the family residence, further encumbrancing any assets, or unreasonably using credit cards or cash advances against credit cards." Practice Book § 25-5 (b) (5). Section 25-5 (c) (2) provides in relevant part that "[f]ailure to obey these orders may be punishable by contempt of court. . . ." As the foregoing demonstrates, our statutes and our rules of practice provide significant remedies for when a party to a dissolution action has been found to dissipate assets.

Powell-Ferri asserts that the public policy of the state supports the creation of a new cause of action requiring a party to a dissolution proceeding to take affirmative steps to recover marital assets taken by a third party. We disagree. Our review of the dissolution statutes and our rules of practice demonstrates that the public policy of this state is to attempt to keep the financial situation of the parties at a status quo during the pendency of the dissolution action. "A party to an action for dissolution does not have unlimited power to frustrate orderly judicial adjudication of rights in marital property. While neither marriage nor an action for dissolution serves, in and of itself, to transfer an interest in property from one spouse to another; General Statutes § 46b-36; *Tobey* v. *Tobey*, 165 Conn. 742, 748, 345 A.2d 21 (1974); the institution of judicial proceedings serves, at least between the parties, to preserve the status quo from impairment by fraud. A transfer made after notice of an actual or imminent action seeking alimony or support may be found fraudulent and set aside. See *Pappas* v. *Pappas*, 164 Conn. 242, 244–45, 320 A.2d 809 (1973); *Harrison* v. *Harrison*, 228 Ga. 126, [126–27, 184 S.E.2d 147] (1971); *Sherrill* v. *Mallicote*, [57 Tenn. App. 241, 250, 417 S.W.2d 798 (1967)]." *Molitor* v. *Molitor*, 184 Conn. 530, 534, 440 A.2d 215 (1981).

Nevertheless, in *Gershman* v. *Gershman*, supra, 286 Conn. 351, this court found that a party to a dissolution proceeding does not dissipate assets in the absence of a finding of "either financial misconduct, e.g., intentional waste or a selfish financial transaction, or that the defendant had used marital assets for a nonmarital purpose with regard to either of these transactions." This court further explained that "[g]enerally, dissipation is intended to address the situation in which one spouse conceals, conveys or wastes marital assets in anticipation of a divorce. See 2 B. Turner, Equitable Distribution of Property (3d Ed. 2005) § 6:102, p. 539. Most courts have concluded that some type of improper conduct is required before a finding of dissipation can be made. Thus, courts have traditionally recognized dissipation in the following paradigmatic contexts: gambling, support of a paramour, or the transfer of an asset to a third party for little or no consideration." (Footnotes omitted.) *Gershman* v. *Gershman*, supra, 346.

In *Finan* v. *Finan*, supra, 287 Conn. 499, this court

concluded that "a trial court may consider evidence that a spouse dissipated marital assets prior to the couple's physical separation, for purposes of determining an equitable distribution of property under § 46b-81, so long as the actions constituting dissipation occur either: (1) in contemplation of divorce or separation; or (2) while the marriage is in serious jeopardy or is undergoing an irretrievable breakdown." In doing so, this court examined the meaning of the term "preservation," which is not defined in § 46b-81. This court, therefore, turned to the ordinary understanding of the term. "The definition of 'preserve' in the American Heritage Dictionary of the English Language (4th Ed. 2000) is '[t]o maintain in safety from injury, peril, or harm; protect. . . .' 'Dissipation,' on the other hand, is defined as '[w]asteful expenditure or consumption. . . .' Id. Under the common usage of the terms, 'dissipation' is the financial antithesis of 'preservation.' More specifically, a party that dissipates assets detracts from the preservation of those assets. Accordingly, Connecticut trial courts have the statutory authority, under § 46b-81, to consider a spouse's dissipation of marital assets when determining the nature and value of property to be assigned to each respective spouse." (Footnote omitted.) *Finan* v. *Finan*, supra, 500–501.

A review of our statutes, rules of practice and case law demonstrates that the public policy of this state is to prohibit a party to a dissolution proceeding from removing marital assets for an improper purpose and to maintain the status quo of the parties' assets during the pendency of the dissolution proceeding. In the present case, it is undisputed that Ferri did not have a role in creating the 2011 trust or decanting any of the assets from the 1983 trust. Accordingly, the public policy of prohibiting dissipation of assets by parties to a dissolution proceeding does not support the cause of action urged by Powell-Ferri.

A review of our statutory scheme and rules of practice further demonstrates that a party to a dissolution action that believes the other party improperly removed assets from the estate has adequate remedies available to it. First, the party that believes marital assets were fraudulently removed during the pendency of the appeal may ask that the court take such action into account when fashioning financial orders. Indeed, this court has repeatedly recognized that our statutory scheme empowers "trial courts to deal broadly with property and its equitable division incident to dissolution proceedings." *Lopiano* v. *Lopiano*, 247 Conn. 356, 365, 752 A.2d 1000 (1998). "[A]s a general matter, the trial court has wide discretion and broad equitable power to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. . . . *Passamano* v. *Passamano*, 228 Conn. 85, 95, 634 A.2d 891 (1993)." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 381, 107 A.3d 920 (2015). Also,

under Practice Book § 25-5 (c) (2), the party that believes marital assets were fraudulently removed during the pendency of the appeal may file a motion for contempt of court for violation of the automatic order.

Indeed, as we explained previously herein, "[t]o determine whether existing remedies are sufficient to compensate those who seek the recognition of a new cause of action, we first analyze the scope and applicability of the current remedies under the facts alleged [in the operative pleading]." *ATC Partnership* v. *Coats North America Consolidated, Inc.*, supra, 284 Conn. 553. In the present case, although the facts do not seem to support a finding of dissipation under *Gershman* v. *Gershman*, supra, 286 Conn. 351, or the basis of a motion for contempt of court under Practice Book § 25-5 (c) (2), the broad equitable powers of the trial court in dissolution proceedings offers a remedy to Powell-Ferri. If the plaintiffs are allowed to decant the assets of the 1983 trust into the 2011 trust, which is solely for the benefit of Ferri, Powell-Ferri can ask the trial court to keep that transfer in mind when forming the mosaic of orders in the dissolution proceeding. In other words, in fashioning the financial orders of the dissolution proceeding, the trial court can take into account the significant assets that will be available to Ferri through the 2011 trust. "The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . ." (Internal quotation marks omitted.) *Passamano* v. *Passamano*, supra, 228 Conn. 95, quoting *Sunbury* v. *Sunbury*, 210 Conn. 170, 174, 553 A.2d 612 (1989).

Accordingly, we conclude that the judicial sanctions available are not so ineffective as to warrant the recognition of a new cause of action. See *ATC Partnership* v. *Coats North America Consolidated, Inc.*, supra, 284 Conn. 553 ("[w]hen we acknowledge new causes of action, we also look to see if the judicial sanctions available are so ineffective as to warrant the recognition of a new cause of action").

Finally, Powell-Ferri does not cite, and we cannot find, any other jurisdiction that has recognized a cause of action against a party to a dissolution action for failing to take affirmative steps to recover marital assets from a third party. See id. ("we are mindful of growing judicial receptivity to the new cause of action"). Therefore, we decline the invitation to recognize such a cause of action in the present case.

## II

Powell-Ferri also claims that it was procedurally improper for the trial court to decide the legal sufficiency of her cross complaint within the context of a

motion for summary judgment. In response, Ferri claims that it was proper for the trial court to grant summary judgment on the cross complaint because it was clear on the face of the complaint that it was legally insufficient and the defect could not be cured by repleading. We agree with Ferri.

We begin with the appropriate standard of review. "[W]e apply plenary review to the granting of either a motion for summary judgment or a motion to strike." *American Progressive Life & Health Ins. Co. of New York* v. *Better Benefits, LLC*, 292 Conn. 111, 122, 971 A.2d 17 (2009).

"[T]he use of a motion for summary judgment to challenge the legal sufficiency of a complaint is appropriate when the complaint fails to set forth a cause of action and the defendant can establish that the defect could not be cured by repleading. *Larobina* v. *McDonald*, [274 Conn. 394, 401, 876 A.2d 522 (2005)]. [W]e will not reverse the trial court's ruling on a motion for summary judgment that was used to challenge the legal sufficiency of the complaint when it is clear that the motion was being used for that purpose and the nonmoving party, by failing to object to the procedure before the trial court, cannot demonstrate prejudice. A [party] should not be allowed to argue to the trial court that his complaint is legally sufficient and then argue on appeal that the trial court should have allowed him to amend his pleading to render it legally sufficient. Our rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade. . . . Id., 402." (Internal quotation marks omitted.) *American Progressive Life & Health Ins. Co. of New York* v. *Better Benefits, LLC*, supra, 292 Conn. 121–22.

In doing so, this court has recognized that "there are competing concerns at issue when considering the propriety of using a motion for summary judgment for such a purpose. On the one hand, [i]f it is clear on the face of the complaint that it is legally insufficient and that an opportunity to amend it would not [cure that insufficiency], we can perceive no reason why [a] defendant should be prohibited from claiming that he is entitled to judgment as a matter of law and from invoking the only available procedure for raising such a claim after the pleadings are closed. . . . It is incumbent on a plaintiff to allege some recognizable cause of action in his complaint. . . . Thus, failure by [a defendant] to [strike] any portion of the . . . complaint does not prevent [that defendant] from claiming that the [plaintiff] had no cause of action and that [summary judgment was] warranted. . . . [Indeed], this court repeatedly has recognized that the desire for judicial efficiency inherent in the summary judgment procedure would be

frustrated if parties were forced to try a case where there was no real issue to be tried. . . . [*Larobina* v. *McDonald*, supra, 274 Conn. 401–402]. On the other hand, the use of a motion for summary judgment instead of a motion to strike may be unfair to the nonmoving party because [t]he granting of a defendant's motion for summary judgment puts [a] plaintiff out of court . . . [while the] granting of a motion to strike allows [a] plaintiff to replead his or her case. . . . Id., 401; see Practice Book §§ 10-44 and 17-49." (Internal quotation marks omitted.) *American Progressive Life & Health Ins. Co. of New York* v. *Better Benefits, LLC*, supra, 292 Conn. 120–21.

In the present case, Powell-Ferri asserts that summary judgment was not appropriate and that she should have the opportunity to replead facts to state a legally sufficient cause of action. As we explained in part I of this opinion, we conclude that this court should not recognize any cause of action that would require a party to a dissolution proceeding to take affirmative steps to recover marital assets from a third party without a finding of dissipation. In light of that conclusion, there is no set of facts that Powell-Ferri could plead to state a legally sufficient cause of action under this theory and, therefore, we conclude that the trial court properly granted summary judgment in favor of Ferri.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] We note that, although Medaglia subsequently resigned from his position as trustee, he remains a plaintiff in the underlying action. On June 11, 2013, the trial court granted a motion seeking to add a new trustee, Maurice T. FitzMaurice, as a party plaintiff. The present appeal addresses only the judgment of the trial court on Powell-Ferri's cross complaint and, therefore, Michael Ferri, Medaglia, and FitzMaurice are not parties to this appeal. Because the facts underlying this appeal do not involve FitzMaurice, in the interest of simplicity, we refer to Michael Ferri and Medaglia collectively as the plaintiffs and individually by name.

[2] Ferri testified in his deposition that he thought the 1983 trust was worth between $60 and $70 million at some point before this transfer.

[3] Powell-Ferri appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] General Statutes § 46b-81 provides: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income.

The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

We note that, although § 46b-81 has recently been amended by our legislature; see Public Acts 2013, No. 13-213, § 2; that amendment has no bearing on the merits of the present appeal. In the interest of simplicity, we refer to the current revision of the statute.

---