## MARGARET FEBBRORIELLO *v.*
## MICHAEL FEBBRORIELLO
## (7272)

SPALLONE, DALY and NORCOTT, Js.

Argued January 4—decision released April 10, 1990

*Louis Parley,* for the appellant (defendant).

*Edward J. Dolan,* for the appellee (plaintiff).

NORCOTT, J. The defendant appeals challenging the financial orders entered by the state trial referee acting as the trial court in a dissolution action. On appeal, the defendant claims that the trial court erred (1) in basing the alimony and child support orders on an improper income analysis, (2) in basing the division of property on its finding that the defendant had an interest in certain additional property, (3) in awarding counsel fees to the plaintiff, and (4) in ordering the defendant to pay the plaintiff for nonsupport during the parties' separation. We find no error.

The following facts are relevant to this appeal. The parties were married on May 29, 1971, and have two children born during the marriage, a son born March 29, 1974, and a daughter born April 9, 1981. The parties separated in January, 1987, after the plaintiff commenced the dissolution action.

The defendant is an administrator of the diagnostic imaging services at Yale-New Haven Hospital. He receives a second income from a corporation, H.O.M.E., Inc., in which he holds a 25 percent ownership interest. By August, 1987, he had signed a real estate agreement for the purchase of a house in Cheshire with his companion, Cynthia Lago, with whom he was residing at the time of trial. The plaintiff is a full-time homemaker who possessed certain nursing skills, which she had not used since her marriage to the defendant seventeen years earlier. At the time of trial, she hoped to go back to work on a part-time basis, subject to her childcare needs.

Additionally, the parties owned a Florida condominium from which they received rental income. Other property interests of the parties included a $10,000 to $16,000 savings account, funds invested in a tax sheltered annuity, and funds in the defendant's pension plan.

I

The defendant first argues that the alimony and child support orders must be set aside because the trial court erroneously based these orders on the defendant's gross income rather than on his available net income. He claims that the only evidence before the trial court dealt with gross figures, and, therefore, the trial court could only have based its award on gross amounts. We disagree.

The standard of review in domestic relations cases is well settled. This court "will not reverse a trial court's rulings regarding financial orders unless the court incorrectly applied the law or *could not reasonably have concluded as it did."* (Emphasis added.) *Watson* v. *Watson,* 20 Conn. App. 551, 554, 568 A.2d 1044 (1990); see also *Sunbury* v. *Sunbury,* 13 Conn. App. 651, 661, 538 A.2d 1082 (1988), reversed on other grounds, 210 Conn. 170, 553 A.2d 612 (1989). In determining whether the trial court's broad legal discretion is abused, " ' " 'great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness.' " ' " *Timm* v. *Timm,* 195 Conn. 202, 206, 487 A.2d 191 (1985). On review of the entire record, including the transcripts and exhibits, we conclude that the defendant has not shown that the trial court's award could only have been based on the defendant's gross income.

It is clear that a trial court must base periodic alimony and child support orders on the available *net* income of the parties. *Sunbury* v. *Sunbury,* supra. "Gross earnings is not a criterion for awards of alimony. It is the net income, which is available to the defendant, which the court must consider." *Tobey* v. *Tobey,* 165 Conn. 742, 747, 345 A.2d 21 (1974). The trial court had before it ample evidence from which it could

have determined the defendant's net income. It not only heard the testimony of the parties on the issue of the defendant's income, but it also had before it the defendant's financial affidavit as well as his tax returns for the years 1985 through 1987, which clearly list his gross income and total taxes. Further, the trial court heard extensive testimony on the supplemental income earned by the defendant from his interest in H.O.M.E. as well as the taxes withheld therefrom. The court also had before it the defendant's W-2 wage and tax statements from this supplemental income indicating the amounts withheld from that income. This information, too, was evident from, and had been incorporated into, the defendant's tax returns.

With all of this information before it, we cannot say that the trial court could only have based its award on the defendant's gross income. The trial court could have easily determined the defendant's available income and reasonably reached the result that it did. Because the trial court's award was supported by the evidence, it is not clearly erroneous. Accordingly, we find no error.

## II

The defendant next claims that the trial court erred in its property division order.[1] He claims that it was erroneous for the trial court to find that he had an interest in property owned by Cynthia Lago because he had "testified that he had no interest." This argument is without merit.

" 'It is the sole province of the trial court to weigh and interpret the evidence before it and to pass upon

---

[1] The defendant claims that under the rule of *Sunbury* v. *Sunbury*, 210 Conn. 170, 553 A.2d 612 (1989), because there is error in the trial court's award of alimony and support, this court must also vacate the property division award. Our conclusion that there is no error in the alimony and support awards is, therefore, dispositive and we need not address the issue.

the credibility of witnesses.' *Smith* v. *Smith,* 185 Conn. 491, 493, 441 A.2d 140 (1981) . . . . We will not retry the facts." (Citations omitted.) *Ferrucci* v. *Ferrucci,* 11 Conn. App. 369, 373–74, 527 A.2d 1027, cert. denied, 205 Conn. 805, 531 A.2d 935 (1987); see also *Pascal* v. *Pascal,* 2 Conn. App. 472, 482, 481 A.2d 68 (1984). The court was free to discredit the defendant's testimony that he had no interest in the property. *Pascal* v. *Pascal,* supra, 483. This is especially true in light of the defendant's testimony that he makes the mortgage payments, that his name appears on the mortgage, the purchase agreement and on every bank paper except the deed itself, that he was living in the house and that as soon as the divorce became final he planned to marry Lago.

## III

The defendant next argues that the trial court erred in awarding counsel fees to the plaintiff. He claims that there was no evidence presented upon which the court could have based its award.[2] We disagree.

The decision to award counsel fees is a matter of discretion. "Pursuant to General Statutes § 46b-62, a trial court has the discretion to award counsel fees to a party in a dissolution action 'in accordance with their respective financial abilities and the criteria set forth in Section 46b-82,' including length of the marriage, causes for the dissolution of the marriage, the age, health, station, occupation, amount and sources of income, vocational skill, employability, estate and needs of each party." *O'Neill* v. *O'Neill,* 13 Conn. App. 300, 305, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). " ' "Courts ordinarily award counsel fees in

[2] The defendant advances the same *Sunbury* claim for this issue as he did for his challenge of the property award. We need not address this issue. See footnote 1, supra.

divorce cases so that a party (usually the wife) may not be deprived of her rights because of lack of funds." ' " Id., 305–306.

The plaintiff's complaint contained a request for attorney's fees. The trial court also had before it the plaintiff's sworn financial affidavit listing an outstanding balance of $7500 for legal fees. This was evidence of the costs incurred. Cf. *Costa* v. *Costa,* 11 Conn. App. 74, 77, 526 A.2d 4 (1987). "Courts have a general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described." *Pearl* v. *Nelson,* 13 Conn. App. 170, 172, 534 A.2d 1257 (1988). The trial court was free to exercise its discretion in determining that counsel fees should be awarded and that the figure listed by the plaintiff was reasonable.

## IV

The defendant's final claim is that the trial court erred in awarding the plaintiff $7500 for his failure to support the children during the last eight months preceding the dissolution hearing. He claims that this award for arrearages was improper because the pendente lite orders that obligated the defendant to pay support to the plaintiff were no longer in effect, and, hence, the award was based on nonexistent orders.

In order to address this issue, we must look to a portion of the procedural history in this case. On January 14, 1987, the parties appeared before the court with the agreements they had reached for the purpose of having the court enter pendente lite orders. The court entered pendente lite orders obligating the defendant to pay the mortgage payments, the house insurance, real estate taxes for January, 1987, and the cost of house repairs. The order also obligated the defendant to pay, as he had agreed, for all current balances on

the plaintiff's car loan and credit cards, the medical bills for the plaintiff and the children as well as the deductible for the children, and any medicine required by the plaintiff as long as the prescriptions are filled at Yale-New Haven Hospital. The plaintiff was ordered to fulfill certain obligations as well.

On March 26, 1987, the case was dismissed for the plaintiff's failure to prosecute. See Practice Book § 251. On April 11, 1987, the plaintiff filed a motion to open and restore the case to the docket, but the case was not restored to the docket until June 13, 1988. The hearing on the dissolution was then held on June 28 and 29, 1988.

Pendente lite orders, by their very definition, are orders that continue to be in force "during the pendency of a suit, action, or litigation." Ballentine's Law Dictionary (3d Ed.) 1969. "Pendente lite orders necessarily cease to exist once a final judgment in the dispute has been rendered because the purpose is extinguished at that time." *Connolly* v. *Connolly,* 191 Conn. 468, 479, 464 A.2d 837 (1983). Pendente lite orders do not survive the entry or rendition of judgment. *Tobey* v. *Tobey,* supra, 745; *LaFaci-Zitzkat* v. *Zitzkat,* 19 Conn. App. 805, 806, 562 A.2d 527 (1989).

An order for alimony and support pendente lite is "interlocutory and terminates with the judgment that follows it. . . . In other words, the judgment . . . was final unless set aside by the court, and it disposed with finality of all interlocutory orders." *Saunders* v. *Saunders,* 140 Conn. 140, 146, 98 A.2d 815 (1953). The dismissal here was a final judgment. "An order of nonsuit terminates an action when it is issued and no further proceedings are necessary." *Osborne* v. *Osborne,* 2 Conn. App. 635, 638, 482 A.2d 77 (1984).

The plaintiff correctly concedes that the pendente lite orders necessarily lapsed when the action was dis-

missed. She argues, however, that the underlying agreement continued to be in effect. This argument is without merit.

It is clear from a review of the transcript of the hearing on the pendente lite motions that the *agreement* between the parties was an agreement *for pendente lite* purposes. The parties, at the time of the hearing, clearly indicated that their agreement was merely for purposes of expediting the hearing, and there is no indication that either party intended this agreement to serve any purpose other than to provide the court with the basis for the content of the pendente lite orders. Once the action lapsed, therefore, the orders also lapsed.

The plaintiff further argues that even if the agreement fails, the defendant violated his statutory obligation to provide "reasonable support" to the family. See General Statutes § 46b-37. Although we conclude that the pendente lite orders lapsed with the court's dismissal of the case and that no agreement survived that dismissal, we, nevertheless, hold that the trial court did not err in ordering the defendant to pay the plaintiff $7500 for his failure to provide reasonable support.

In her complaint, the plaintiff claimed dissolution of marriage, custody of the children, child support, alimony, property division, counsel fees, and any "further relief as law and equity may provide." See *LaCroix* v. *LaCroix*, 189 Conn. 685, 689, 457 A.2d 1076 (1983). Although the complaint did not specifically contain a claim for past support, the case was presented to the court on this contested issue as well as the one specifically mentioned; see *Vanderlip* v. *Vanderlip*, 1 Conn. App. 158, 159 n.3, 468 A.2d 1253 (1984); and the plaintiff did claim support; see *Martin* v. *Martin*, 134 Conn. 354, 355, 57 A.2d 622 (1948); and "further relief as law

and equity may provide." See *LaCroix* v. *LaCroix,* supra. An award for past support is founded in equity. *Martin* v. *Martin,* supra, 356.

"The paramount role of a court when considering domestic relations cases is one of a 'court of equity.' The court's equity powers are essential to its ability to fashion the appropriate relief in domestic relations cases. 'The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . . These powers, although not expressly given to the court by statute, have been held to be inherent powers of the trial court . . . .' " *LaBow* v. *LaBow,* 13 Conn. App. 330, 351, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988); see also *Darak* v. *Darak,* 210 Conn. 462, 478, 556 A.2d 145 (1989). An equitable award may be found to be error only if it is based on factual findings that are clearly erroneous. *LaCroix* v. *LaCroix,* supra.

The trial court found, on the basis of the evidence before it, that the cause of the breakdown of the marriage was the defendant's erratic behavior and failure to keep reasonable hours. At the time the dissolution proceedings began, the defendant was involved with Lago and shortly thereafter purchased a house with her where they were living at the time of trial.

The trial court also heard the plaintiff's testimony that the defendant stopped providing support to the plaintiff in October or November, 1987, except for one payment of $500 in January, 1988. The plaintiff also testified that because she was unable to make certain bill payments, her telephone was shut off for eighteen days and her power was shut off for a period of time. Also, because her children's doctor bills had not been

paid and she was unable to pay them the doctor refused to treat her daughter when she contracted mumps. She could not pay the house taxes or the mortgage payments, and the bank threatened foreclosure proceedings against her. In order to make the payments on her bills and to keep her house, she was forced to borrow from her family and to withdraw money from a CD account that she and the defendant had set up in their son's name for his education.

General Statutes § 46b-37 (b) makes it the "joint duty" of both spouses to "support his or her family." This statute permits an action against a spouse who is liable for support if that spouse has not provided "reasonable support." See General Statutes § 46b-37 (c). The defendant did not contest his obligation to provide reasonable support to the plaintiff. He argued, rather, that he had provided the support necessary. The court was free to reject this testimony and to believe the plaintiff. *Pascal* v. *Pascal,* supra.

"When the husband has abandoned the wife, or when he makes it intolerable for her to live with him and thereafter he refuses to furnish her support and fulfill the . . . obligation which the law places upon him, upon proper evidence offered, she may be entitled to relief under the statute [§ 7308, the predecessor of § 46b-37] on the grounds that she has been compelled to support herself." *Cantiello* v. *Cantiello,* 136 Conn. 685, 689, 74 A.2d 199 (1950); see also *Yale University School of Medicine* v. *Collier,* 206 Conn. 31, 36–38, 536 A.2d 588 (1988). The wife in that situation is entitled to indemnity by the husband " 'for any money that she shall have been compelled to pay' for the support of the family." *Churchward* v. *Churchward,* 132 Conn. 72, 79, 42 A.2d 659 (1945).

The total amount spent by the plaintiff to meet her bills and support her family was almost $15,000, and

the trial court was justified in assessing $7500 as the defendant's share. On the basis of the evidence before the trial court, we cannot say that it was error to order the defendant to pay $7500 for failure to provide support during the eight months preceding the trial.

There is no error.

In this opinion the other judges concurred.