[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on July 25, 1987 at Wellfleet, Massachusetts. The plaintiff's birth name was Susan M. Arnold. The parties have one child, issue of the marriage, Michael David, born August 26, 1990. No other children were born to the mother during the course of the marriage. All other jurisdictional issues have been demonstrated to the court through the testimony.
The parties filed an eleven page stipulation concerning irretrievable breakdown of the marriage, custody, visitation, and financial issues with respect to property prior to the commencement of evidence. The parties crafted a comprehensive and laudable agreement which was ratified by the court and made a part of the judgement of the court by reference or incorporation.
The plaintiff currently resides in Thomaston, Connecticut, and their child, Michael resides primarily with her. She is 37 and her husband is 35. Her health is excellent. She is employed as a rehabilitation therapist for Northwest Mental Health CT Page 5325-N Network, and has been so employed for the past twelve years. She has no other income. She has received help from friends and family during the pendency of this action, but many of those sums were advanced as loans. She is currently preparing to apply to a Master's Program in Occupational Therapy at Mercy College in New York. She is presently taking undergraduate courses to qualify. She expects to complete that degree in three years and will have employment opportunities within a school system, which will make her work schedule more compatible with her son's schedule.
Her husband is a tool and dye maker and she testified that he has always worked overtime in that capacity, both during and before the marriage. Plaintiff's Exhibits 1-12
The plaintiff was allowed to testify with respect to her perceptions concerning the breakdown of the marriage, and described her husband as having a violent temper and as engaging in verbally abusive behaviors. He was physically abusive to the child, and had a problem with alcohol. He was arrested for Driving Under The Influence in March of 1995. She admitted that she was rigid at times, and that she fought with him over the expenditure of money. The parties maintained three separate checking accounts. They each maintained their own accounts and one joint account for household expenditures, into which the defendant deposited Four Hundred, Sixty ($460.00) Dollars per week. He contributed no other funds to her. That system was used during the entire course of their marriage. On cross-examination, she agreed that those funds were used to pay mortgage, utility, insurance, car payment, and incidental bills. She paid for the food, professional dues, furnishings, gifts, living expenses.
She moved out of the marital home in October of 1995. Michael had begun attending the Montessori School in September. She did not have enough money to continue to pay the tuition at the Montessori School, so she wrote a check in the amount of One Thousand, Five Hundred ($1,500.00) Dollars from the joint account. The defendant continues to pay one-half of the tuition. The defendant maintained a joint account with his mother, but the plaintiff was not aware if he actually deposited funds from his employment into that account. He did begin to give her $130.00 per week routinely, except for about five (5) weeks, of which he made up three weeks. She has pursued a pattern of borrowing and being gifted so as to make her expenses, which is described in Plaintiff's Exhibit 13. On cross-examination, she conceded that CT Page 5325-O there was a period of time when she did not disclose her whereabouts to the defendant, although she was employed at the same location, and argued that he could have forwarded money to her if he had desired to.
The plaintiff has legal fees in the approximate amount of Sixteen Thousand ($16,000.00) Dollars. She testified that she expected to pay less than that and that there was an agreement to pay less than the total amount due. She has modified her life style since the separation, and is requesting One Hundred, Seventy-five ($175.00) Dollars in alimony to make up at least a portion of that shortfall. She makes that request for a period of four and one-half years, insofar as she is enhancing her education, and hopes to amend her schedule to meet his after school needs.
The plaintiff claims that the husband's income is approximately Sixty Thousand ($60,000.00) Dollars. On 3/11/96, the defendant estimated income of $59,000.00 on a financial aid affidavit for the Montessori School. She does not believe that the child will be able to continue. She does not believe that it is benefiting him. He is not paying attention, and the resources in public school will be there if a learning disability is ultimately diagnosed.
On cross-examination, she agreed that occupational therapists in this area might earn less, but that she would not take that kind of job. She has attended school for the past three years. She had been certified to teach in Ohio, but that expired. For the past five years she has furthered her education in one way or another.
When the parties separated, they had few credit card debts. There was no balance due on her credit cards at the time of the separation on October 20, 1995. She only knows that he has a Discover card, but knew of no others during the time of the marriage.
On cross-examination she conceded that they disagreed about how to rear their child, and that they spent little time with one another as a couple, but that he was rarely at home. She claimed that she was asked to move out of his bedroom in January of 1995. She testified that her husband required the child to sit still in public for extended periods of time and it was difficult for the CT Page 5325-P child to do that. She claimed that he did not have patience with the child.
The defendant testified that he met the plaintiff at their joint employment in the restaurant business, which employment served as second jobs for both. He graduated from Kaynor Technical High School in Waterbury. They sold a condominium to purchase the marital home on John Street in Naugatuck, in which the defendant currently resides, and which has been the subject of a property distribution as agreed to between the parties.
He testified that they divided the family bills, and that he deposited certain funds into a joint checking account for the payment of household bills, and she paid for the day care expenses and other expenses of their child. He testified that they had agreed that she would pay the school expenses of the child. He claims that she withdrew more than Four Thousand ($4,000.00) Dollars from the joint account. (Plaintiff's 19) He agreed that she was running the family household and paying for the expenses of the child. Plaintiff's 16 is a file folder which depicts their "budget" in the plaintiff's handwriting. Plaintiff's 17 is another envelope with budget writing, noting expenditures from her own personal account, during a time when the parties were living together, and using their joint account for household expenses as previously described. On re-cross examination, the defendant agreed that there had been a number of expenditures that he made out their joint account for household bills which were not budgeted items. The amounts agreed to were approximately the same.
His company moved to North Carolina, and he would have had a very beneficial relocation package. She refused to move with him because of her employment and their family ties to Connecticut. In 1994 he was required to seek new employment. He was unemployed for approximately six weeks in 1994, after which he worked for Stevens, then for JL in Watertown. He had that second job for approximately one and one-half years until May of 1995. Currently he is employed only at Stevens. He was originally employed as a tool and dye maker, for a seven month period to March of 1995. Thereafter he was offered the job of general manager of one of the departments at Stevens, and remained on an hourly wage. He was able to turn that part of the company into a profit-making concern, and he ceased getting overtime. His future in the company, he claims, will take one of two paths. He will either be CT Page 5325-Q on salary, or, if he took a demotion, he would be on an hourly basis. He does receive some overtime.
He did overtime during evenings, and now is attending one group meeting at the Morris Center, and one at the Wheeler Clinic. He also has the child one night a week, and looks forward to couples therapy as agreed to by the parties to assist them in the easing of their conflict concerning parenting issues of the child.
His claim is that he cannot work overtime as he did in the past. On cross-examination, he was asked whether or not he had had a pattern from his 20's that he worked overtime. The last time he recalled not working overtime was when his plant was getting ready to close down in 1994. For the past five years his income has been Fifty-nine Thousand ($59,000.00) Dollars to Sixty Thousand ($60,000.00) Dollars.
He testified that she attended school off and on during the entire course of the marriage. She attended courses at Storrs prior to the birth of the child, and then at Southern on weekends to secure her teaching certificate. Thereafter she took night courses at Sacred Heart in Bridgeport for nursing, then for physical therapy. She took courses off and on for other pursuits, which he claims never came to fruition.
He claimed that they argued over the feeding of the child, as well as the disciplining of the child. He claimed that she called him a "beer-drinking, factory worker" who did not know what was best for the child. They argued about the child's eating and drinking and spilling in the car. The control issues surrounding the child created escalating problems for the couple. On cross-examination, he agreed that there had been some conversation concerning whether the child would be evaluated for attention deficit disorder. He denied restraining the child in restaurants.
The defendant admitted that he drank during the marriage, but claimed that he did so in response to the downward spiral of the marriage. He is currently in two separate programs with respect to his drinking, and is clearly still not aware that his difficulty with alcohol is his responsibility. His attendance at the Wheeler Clinic is for a ten (10) week period only for the Alcohol Education program after an arrest for Driving Under the CT Page 5325-R Influence. The Morris Foundation conducts a Men's Issues Group, which deals with anger management issues, among others. The defendant did not want to admit that he was dealing with anger issues, but on rebuttal, the plaintiff testified and offered Plaintiff's 18, a dented refrigerator and handle, which he had damaged in anger.
He has agreed to attend AA and seek a sponsor. He did not recall saying to the plaintiff that he wasn't getting enough out of the program. He denied that the plaintiff had asked him to go with her to therapy for the child, but did agree that it was her idea.
The defendant testified that he is current on the mortgage, taxes, insurance and the like. He does not have accumulating credit card debt. He agreed that he had paid for one-half of the Montessori tuition. He agreed with her testimony that he had placed money into their joint account and when asked where he deposited the balance of the funds, he agreed that the funds were placed in an account with his mother. (Plaintiff's Exhibit 15) He testified that after the deposit of approximately Four Hundred, Sixty ($460.00) Dollars into their joint account, he did not recall if the amount into his account with his mother, but it was approximately Two Hundred ($200.00) Dollars to Two Hundred, Fifty ($250.00) Dollars. He did not retain cash, but rather ATM for cash.
He testified that he has offered all of his guns, but one, for sale, to have the money to pay debts so that they will not ruin their credit rating for the future. He claims that there is little left for him after the payment of child support. He does not believe he has the time to work overtime.
He testified that he went on individual vacations out of the account with his mother, and those funds were never accounted for between the parties. The plaintiff as well, was not accountable to him for the funds she retained in her own account.
He had approximately Four Thousand ($4,000.00) Dollars in that account (Plaintiff's 15), in April of 1996. On October 5, 1995, the balance in that account was Two Hundred, Eighty-seven ($287.00) Dollars (Plaintiff's Exhibit 8). On redirect examination, he claimed that the balance in April of 1996 was from a loan from his parents. CT Page 5325-S
The plaintiff claims that the defendant should pay the reasonable expenses of the family, less a credit for actual payments made which were voluntarily made in the amount of One Hundred, Thirty ($130.00) Dollars per week. The plaintiff citesFebbroriello v. Febbroriello, 21 Conn. App. 200, (1990) and Conn. Gen. Stat. Sec. 46b-83. The plaintiff claims that the minimum amount of family maintenance paid left her with a large shortfall each and every week of the separation. The plaintiff also claims that her exhibit 15 demonstrates that there was a willfull cessation of overtime work that coincided precisely with the filing of the action for dissolution of the marriage. The plaintiff claims that his earning capacity should be set by the court at Sixty Thousand ($60,000.00) Dollars.
With respect to her claim for alimony, the plaintiff claims that the disposable income analysis requires that the defendant pay alimony to the plaintiff. The plaintiff claims that she has insufficient income even with the payment of child support to do that, and that the totality of the circumstances of the marriage require that payment. The plaintiff cites Basile v. Basile,185 Conn. 141 (1981), Weinstein v. Weinstein, 18 Conn. App. 622
(1989), and Ippolito v. Ippolito, 28 Conn. App. 745, cert. denied 224 Conn. 905 (1992). The plaintiff claims that were it not for the fault demonstrated in the evidence, the plaintiff would not be seeking the remedy of divorce, but rather would have continued to have the support of her husband. There is little for her to achieve and marshall as assets pursuant to the property distribution, and that must also be taken into account in the alimony determination.
The defendant claims that the computations he argues to the court gives the plaintiff 55% of the disposable resources of this couple. His predicate for the income is Forty-eight Thousand ($48,000.00) Dollars for the defendant, and Forty-one Thousand ($41,000.00) Dollars for the plaintiff. He argues that they leave this marriage with equivalent assets, and with the plaintiff maintaining Three Thousand ($3,000.00) Dollars in credit card debt, while he has Eighteen Thousand ($18,000.00) Dollars in credit card debt. They will each have to have good credit at the time they need to purchase new automobiles, insofar as they are each driving older cars with high mileage.
The defendant asks for a deferral of alimony until the sale CT Page 5325-T of the marital home. The defendant asks that he be allowed to maintain the mortgage and the credit cards until such time as he has flexibility in his income to afford alimony payments. As to child support, he claims that he has paid according to his ability and the legal claim as to retroactive payment should not prevail. Defendant maintains that they each must sacrifice for the moment.
The court finds, based upon the agreement of the parties, that the marriage has irretrievably broken down, and grants a decree dissolving the marriage. The court finds that the earning capacity of the defendant is Sixty Thousand ($60,000.00) Dollars per year, and the the award of child support should be predicated upon that computation of the Child Support Guidelines. The court has assessed the evidence produced at trial, as well as the claims for relief, and has taken into account the statutory criteria of Conn.Gen.Stat. 46b-81 et seq., and orders the following:
1. Child Support. The defendant father shall pay the sum of One Hundred Fifty ($150.00) Dollars per week as child support by contingent wage execution. Such child support shall be payable directly between the parties until such time as the plaintiff may elect to secure the services of Support Enforcement.
2. Alimony. The defendant shall pay the sum of One Hundred Fifty ($150.00) Dollars per week as alimony, which payment shall terminate upon the first occurrence of; a) the death of the plaintiff, b) the remarriage of the plaintiff, or c) five (5) years from the date hereof. The court finds that the plaintiff requires the additional support of the husband during this time to put her in a position that will allow her to be employed in a capacity that will maximize her potential within the confines of providing the child with care after school.
3. Tax payments. The defendant shall be responsible for any outstanding real estate tax bill owed to the Town of Naugatuck for the marital home, which the parties have agreed shall be sold.
The court has entered orders which should allow this family to be supported adequately without unduly encumbering the defendant who is the major wage-earner. The court has heard the argument of counsel for the plaintiff that there be a retroactive CT Page 5325-U application of support for the period of the separation. The court is unwilling to so rule, but will order that the payment of child support and alimony in this case be retroactive to June 1, 1996. Such arrearage shall be paid at the time of the sale of the marital home, if there are proceeds available, and if not, at the rate of Fifty ($50.00) Dollars per week after the sale of the marital home. The defendant should be acknowledged for his attempts to maintain the credit rating of the parties as this case moved to judgment.
The stipulation of the parties, dated May 22, 1996 shall be included as orders of this court, and become a part of the judgment. Judgment may enter in accordance with the stipulation and this memorandum.
DRANGINIS J.
CT Page 5325-V
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 5325-W